NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1103

IN THE MATTER OF THE ESTATE OF FRED W. KUHN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Donald C. Kupperstein, appeals from a contempt judgment issued by the Probate and Family Court ordering the payment of unpaid sanctions entered pursuant to prior contempt orders.  We affirm.

Background.  This case stems from numerous prior proceedings, the facts of which are well known to the parties and need not be repeated in detail here.[1]  Relevant here, the October 28, 2021, contempt judgement at issue in the present case follows years of litigation that arose from a lien that the Massachusetts Executive Office of Health and Human Services

_____

[1] The background facts, procedural history, and details regarding the defendant's conduct, prior judicial findings, and prior court orders are delineated in earlier cases heard in Massachusetts Federal and State courts.  See In re Kupperstein, 994 F.3d 673, 674-677 (1st Cir.), cert. denied sub nom. Kupperstein v. Schall, 142 S. Ct. 118 (2021); In re Kupperstein, 943 F.3d 12, 15-21 (1st Cir. 2019); In re Kupperstein, U.S. Dist. Ct., Civil Nos. 18-11772-LTS and 18-11851-LTS (D. Mass. Apr. 22, 2020); Executive Office of Health & Human Servs. v. Thibodeau, 97 Mass. App. Ct. 1125 (2020).

(EOHHS) placed on the real property of the estate of Fred Kuhn located on Reservoir Street in Norton (property). The bulk of that litigation emanated from the defendant's efforts to evade responsibility for the lien after he had claimed ownership of the property.[2] See In re Kupperstein, 943 F.3d 12, 16-17 & n.3 (1st Cir. 2019) (Kupperstein I). Ultimately, a judge of the Probate and Family Court voided the defendant's claim of ownership of the property and ordered him to pay to EOHHS all monies received from the tenants to whom the defendant had rented the property. See In re Kupperstein, 994 F.3d 673, 674-675 (1st Cir.), cert. denied sub nom. Kupperstein v. Schall, 142 S. Ct. 118 (2021) (Kupperstein II).

The judge subsequently issued an order holding the defendant in contempt for failing to pay EOHHS pursuant to his earlier order. On January 11, 2018, the defendant filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts. In the normal course, "a bankruptcy filing triggers an automatic stay that halts lawsuits against the debtor in other courts until a federal court ends the case or lifts the stay." Kupperstein I, 943 F.3d at 18. On August 10, 2018, following protracted litigation concerning, inter alia, the applicability and enforceability of the bankruptcy

---

[2] Details regarding the manner by which the defendant obtained the property may be found in the earlier cases.

stay, the bankruptcy court granted EOHHS relief from the stay, holding that the "probate court's contempt proceedings were exempt from the automatic stay under 11 U.S.C. 362(b)(4) because they aimed 'to enforce [a] governmental unit's . . . police and regulatory power.'"  Id. at 19.  Following various additional proceedings in Federal courts, the First Circuit addressed "[t]he core dispute" of "whether the probate court's contempt proceedings and resultant penalties are excepted from the automatic stay (as the bankruptcy court held they were)." Kupperstein II, 994 F.3d at 678-679.  The First Circuit held that the bankruptcy court "did not abuse its discretion when lifting the stay as it applied to the probate court's contempt proceedings because those proceedings were excepted from the stay under the police power exception," and further stated that the bankruptcy court's decisions "were correct."  Id. at 682.

Thereafter, on October 28, 2021, the Probate and Family Court judge issued a judgment on yet another complaint for contempt.[3]  That judgment required the defendant to pay "$75,000 plus statutory interest for unpaid contempt sanctions entered pursuant to prior orders of [the] court."  The judgment further

_____

[3] Our review of this matter is hampered by the incomplete and often confusing appellate record submitted by the defendant. Nonetheless, there is no dispute that the defendant did not comply with multiple orders of the Probate and Family Court and that the judge entered multiple judgments of contempt against the defendant.

3

ordered the defendant to pay to EOHHS "the sum of $12,000" from an individual retirement account held in the defendant's name, and to make monthly payments "in the amount of $400.00 per month . . . until [the judgment is] paid in full."[4]  Although not entirely clear, the defendant argues, in essence, that the judge issued the contempt judgment in violation of the bankruptcy stay.

Discussion.  1.  Standard of review.  "We review a judge's ultimate finding of contempt for an abuse of discretion, and we subject questions of law to plenary review."  Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129, 134 (2020).  "A Probate and Family Court judge has the power and authority to find a person in contempt."  Id. at 133.  See G. L. c. 215, § 34.  A finding of civil contempt must be established by "clear and convincing evidence of disobedience of a clear and unequivocal command."  Birchall, petitioner, 454 Mass. 837, 838-839 (2009).

2.  Issue preclusion.  The central issue in the present case is whether the defendant's claims were already litigated and decided in the prior Federal court actions and thus barred under the doctrine of res judicata.  Res judicata is a term that

---

[4] Although the defendant appeals from the October 28, 2021, contempt judgment, much of his argument focuses on the proceedings between January 2018, when he filed for bankruptcy, and August 2018, when the bankruptcy court lifted the stay.

4

includes claim preclusion and issue preclusion. See Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 564 (2004). "The doctrine of issue preclusion provides that when an issue has been 'actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim.'" Jarosz v. Palmer, 436 Mass. 526, 530-531 (2002), quoting Cousinou v. Laramee, 388 Mass. 859, 863 n.4 (1983). See Alicea v. Commonwealth, 466 Mass. 228, 235-236 (2013) ("[A] State court's practice of giving preclusive effect to a Federal court's decision, and vice versa, promote 'the comity between [S]tate and [F]ederal courts that has been recognized as a bulwark of the [F]ederal system'" [citation omitted]).

Here, the defendant's argument that the contempt proceedings violated the bankruptcy stay was actually litigated in Federal court proceedings, is identical to issues adjudicated in those proceedings, and was essential to the decisions in those proceedings. See Kupperstein II, 994 F.3d at 678-682.

a. Actually litigated. "In determining whether an issue was actually litigated for preclusion purposes, courts ask whether the issue was 'subject to an adversary presentation and consequent judgment that was not a product of the parties' consent.'" Martinez v. Waldstein, 89 Mass. App. Ct. 341, 345

5

(2016), quoting Jarosz, 436 Mass. at 531.  See Restatement
(Second) of Judgments § 27 & comment d (1982) (Restatement).  In
the Federal court matters, the issue of whether the contempt
proceedings in the Probate and Family Court violated the
automatic stay was fully litigated.  Indeed, an essential issue
in the First Circuit's consideration of the bankruptcy court's
grant of relief from the stay was the stay's applicability to
the Probate and Family Court's contempt proceedings.
Furthermore, that issue was identical to the issue now raised in
the present appeal by the defendant.  See Kupperstein II, 994
F.3d at 681-682 ("The core dispute is whether the probate
court's contempt proceedings and resultant penalties are
excepted from the automatic stay [as the bankruptcy court held
they were]").  As noted above, the First Circuit determined that
"the probate court's contempt orders are excepted from the
automatic stay under the police power exception."  Id. at 681.
Thus, the issue was "subject to an adversary presentation and
consequent judgment," Jarosz, supra, and therefore was actually
litigated.  See Restatement, supra ("When an issue is properly
raised . . . and is submitted for determination, and is
determined, the issue is actually litigated").

     b.  Essential to the judgment.  The issue of the automatic
stay's applicability to the Probate and Family Court's
proceedings was also essential to a determination of the

6

defendant's claim that the bankruptcy court's decision lifting the stay constituted an abuse of discretion.  The defendant could not have prevailed on his claim without a decision as to whether the State court contempt proceedings were excepted from the stay.  Therefore, the issue whether the Probate Court's contempt proceedings violated the stay was essential to the First Circuit's determination that the "bankruptcy court did not abuse its discretion when lifting the stay as it applied to the probate court's contempt proceedings because those proceedings were excepted from the stay under the police power exception." Kupperstein II, 994 F.3d at 682.

c. Finality.  A determination is considered final when "the parties were fully heard, the judge's decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed" (citation omitted).  Jarosz, 436 Mass. at 533-534.  In holding that the bankruptcy court did not abuse its discretion in lifting the automatic stay, as applied to the Probate and Family Court's contempt proceedings, the First Circuit issued a valid and final judgment.  Kupperstein

7

II, 994 F.3d at 682.[5]  Accordingly, the defendant's claims are barred by the doctrine of issue preclusion.[6]

Contempt judgment entered
December 7, 2021, affirmed.

By the Court (Rubin, Neyman & Walsh, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  October 19, 2023.

---

[5] To the extent we do not discuss other arguments made by the parties, they have not been overlooked.  "We find nothing in them that requires discussion."  Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[6] In any event, when this case was previously before a panel of this court, and as the panel noted in its memorandum and order in that case, the defendant agreed that the question of the applicability of the automatic stay was one for the Federal courts, and not this court.  That remains the case.  See Executive Office of Health & Human Servs. v. Thibodeau, 97 Mass. App. Ct. 1125 (2020).

[7] The panelists are listed in order of seniority.