NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1311

RYAN WELTER

vs.

WILLIAM WHELAN & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Ryan Welter commenced this action against William Whelan and associated limited liability corporations (collectively, defendants) alleging unfair and deceptive acts in violation of G. L. c. 93A, breach of contract, tortious interference with established business relations, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. A judge of the Superior Court allowed the defendants' special motion to dismiss filed pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H, and Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and a judgment of dismissal entered.

---

[1] Whelan Associates, LLC; Paramount MOB, LLC; and WAMP LLC.

Welter appeals from the judge's order allowing the special motion to dismiss and the judgment of dismissal.  We affirm.

Background.  The facts are derived from the pleadings and documentary evidence before the Superior Court.  Welter is a physician and principal of Tristan Medical Enterprises, P.C. (Tristan).  In 2017, Tristan entered into a commercial lease with Paramount MOB, LLC (Paramount) for two medical office suites in a building in Raynham.  Welter personally guaranteed the lease.  In May 2019, Paramount commenced a summary process action against Tristan in Taunton District Court (Taunton case).  In June 2019, Tristan and Paramount entered into an agreement for judgment that awarded possession of the property to Paramount, with the execution to issue immediately but held in escrow by Paramount's attorney.  The agreement allowed Tristan to continue to occupy the leased premises, so long as it did not default on future payments.  However, if Tristan failed to make any payment within five days of its due date, Paramount had the right to serve the execution on Tristan.  Tristan failed to pay rent for the period commencing on August 1, 2019.  Paramount served the execution for possession, and Tristan vacated the premises on or about August 31, 2019.  In December 2019, Paramount commenced an action for damages under the lease against Tristan and Welter in Bristol Superior Court (Bristol case).  Paramount prevailed and received a judgment for

2

$577,053.79 in damages, costs, and fees.[2]  In October 2022, Welter filed the complaint in the present case.  In January 2023, the defendants filed the special motion to dismiss.  After a hearing, the judge allowed the motion.

Discussion.  "[R]ulings on anti-SLAPP motions are appropriately subject to de novo review."  Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 562 (2024) (Bristol Asphalt).  A party may file a special motion to dismiss if "the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth."  G. L. c. 231, § 59H.  A principal purpose of the anti-SLAPP statute is "to obtain the expeditious dismissal of meritless claims that are based on petitioning alone."  Bristol Asphalt, supra at 541.

A special motion to dismiss is evaluated in stages.  At the first stage of the analysis, the proponent of the special motion to dismiss "must show that the [claim] has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity."  Bristol Asphalt, 493 Mass. at 555-556.  If the proponent does show that the claim is

_____

[2] Although the outcome of the Bristol case (No. 1973CV01139) was pending when Welter filed this complaint, this court may take judicial notice of the records of related proceedings in other courts.  See Jarosz v. Palmer, 436 Mass. 526, 530 (2002).

based solely on the special motion proponent's petitioning activity, "the burden shifts to the special motion opponent." Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 577 (2024), citing G. L. c. 231, § 59H, first par. At that second stage, in order to avoid dismissal, "the special motion opponent must show by a preponderance of the evidence that the special motion proponent's petitioning activity (1) was devoid of any reasonable factual support or any arguable legal basis; and (2) caused the special motion opponent actual injury." Columbia Plaza Assocs., supra at 577.

Here, Welter's complaint alleged that each of his injuries resulted either from a "contrived eviction" (referring to the Taunton case) or from a "malicious claim" (the Bristol case). His claims thus have no substantial basis outside of Paramount's petitioning activities. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 169 (2017), citing G. L. c. 231, § 59H (petitioning activity includes "any written or oral statement made before or submitted to a legislative, executive, or judicial body").

Moving to the second stage of the analysis, the "reasonable factual support or arguable basis in law" standard is analogous to the concept of frivolousness, as both standards resolve the same essential question. Bristol Asphalt, 493 Mass. at 559-560. "[A] claim is frivolous if there is an absence of legal or

4

factual basis for the claim, and if the claim is without even a colorable basis in law."  Id. at 560, quoting Fronk v. Fowler, 456 Mass. 317, 329 (2010).  Here, Paramount prevailed in both the Taunton case and the Bristol case.  In the Taunton case, Paramount served the execution for possession of the premises, following an agreement for judgment, and Tristan vacated the premises.  In the Bristol case, judgment entered for Paramount and against Tristan for $577,053.79 in damages, costs, and fees.  Therefore, Welter cannot establish a lack of factual support or arguable basis in law.[3]

Although Welter's claims are based on Paramount's petitioning activities alone, his complaint also alleged that Whelan was the principal owner or "principal decision maker" of Paramount and the other defendant companies.  However, the complaint contained no plausible allegations pertaining to Whelan in his individual capacity or to the other companies.  The complaint was thus also properly dismissed with respect to William Whelan; Whelan Associates, LLC; and WAMP LLC on this alternative ground.  See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) ("Factual allegations must be enough to

---

[3] Because we conclude that Welter was unable to satisfy the first part of his conjunctive obligations, we need not consider whether Paramount's petitioning activities caused any actual injury to Welter.

raise a right to relief above the speculative level . . .");

Mass. R. Civ. P. 12 (b) (6).[4,5]

<u>Judgment affirmed</u>.

By the Court (Meade, Blake & Brennan, JJ.[6]),

*Paul Little*

Clerk

Entered:  July 26, 2024.

---

[4] "To the extent that we have not specifically addressed other points made . . . in [the appellant's] brief, they 'have not been overlooked.  We find nothing in them that requires discussion.'"  <u>Commonwealth</u> v. <u>Brown</u>, 479 Mass. 163, 168 n.3 (2018), quoting <u>Commonwealth</u> v. <u>Domanski</u>, 332 Mass. 66, 78 (1954).

[5] The defendants' request for appellate attorney's fees is denied.

[6] The panelists are listed in order of seniority.